Christian, J.
delivered the opinion of the court.
The bill in this case is filed by the appellant, James A. Frazier, under the seventh section of chapter 178, Code of 1860, which secures to an infant the right within six months after he arrives at the age of twenty-one years, to show cause against a decree directing a sale of his land during his minority.
The object of the bill is to impeach and set aside a decree of the Circuit court of Bath county, pronounced on the 15th day of May 1863, in the suit of John S. Randolph and Wm. Frazier v. Porter & wife others. The record in that case discloses the following facts: Randolph and William Frazier and John W. Frazier were joint-tenants of two tracts of land, one lying in Bath county, known as the Bath Alum Springs, and the other lying in Rockbridge county, known as the Rockbridge Alum Springs. In both these tracts Randolph and William Frazier owned one undivided moiety, and John W. Frazier the other. *502 During this joint-tenancy John W. Frazier died, leaving as hi® sole heir at law the appellant, James A. Frazier, who inherited from his father the two moieties in said tracts of land subject to the dower of his. mother. Mrs. Frazier subsequently intermarried with Stephen A. Porter, who qualified as the guardian of her son, James A. Frazier.
In February 1868, Eandolph and Frazier being desirous to have partition of the “Bath Alum” property, and satisfied that it could not be divided in kind, (Stephen A. Porter being of the same opinion,), a contract of sale was entered into between William Frazier, “acting for himself, his partner, Eandolph, and for and on behalf of Stephen A. Porter, guardian of James A. Frazier,” of the one part, and Joseph Baxter of the other part, by which contract it was agreed to sell to the said Joseph Baxter the property known as the “Bath Alum Springs,” with the household and kitchen furniture, (excepting the furniture of two rooms,) for the sum of thirty thousand dollars in Confederate States 8 per cent, bonds.
This sale was made expressly upon condition that it was to be ratified by a decree of the Circuit court of Bath, upon proper proceedings to be had in that court. In the meantime Baxter was to deposite with E. H. Maury & Co., bankers, in the city of Eichmond, Confederate bonds, bearing 8 per cent, interest, to the amount of $30,000, to await the action of said Circuit court.
Accordingly on the day of 1863 a hill was filed by Eandolph and Frazier in the Circuit court of Bath county, to which bill Stephen Porter and wife, James A. Frazier, the infant, Stephen Porter, guardian of James A. Frazier and Joseph Baxter, were made defendants.
*503 The bill set forth with much detail how the property had been acquired, for what purpose it had been used, and the joint interest of the owners therein. It alleges the impracticability of a partition in kind, and the advantages to all interested in having a sale for partition. It sets forth as reasons for a sale the fact, that the property had been used as a watering place, which constituted its chief value; that the buildings were rapidly going to decay and ruin, being then used as a hospital for Confederate soldiers; that the enter-prize of keeping the Bath Alum Springs had never been profitable; and that it could not again be used for that purpose without large expenditure of money in the way of repairs. With the bill is exhibited the contract of sale with Baxter, which the court is asked to ratify and confirm as a sale for a full and fair price, and one in every way advantageous to the parties interested.
The answer of Porter and wife admits that partition cannot be made in kind advantageously to the parties interested, and “that the best mode of disposing of said property would be a sale, and the disposition of the proceeds of sale, according to the rights of the parties; and that therefore they willingly concur in the sale made by the plaintiffs to their co-defendant Joseph Baxter, as stated in the plaintiff’s bill, at the price of thirty thousand dollars; and respectfully ask that the said sale may be confirmed by a decree of the court, and the proceeds thereof legally disposed of.”
The separate answer of Stephen A. Porter, as guardian of the appellant, James A. Frazier, is also filed, in which “he admits that the buildings of the ‘Bath Alum’ have become very much dilapidated and out of repair, so that it would take a large amount to put them in a proper state of repair. He also admits the *504 said ‘ Bath Alum’ could not be advantageously divided between the parties interested therein by metes and bounds; and that the interest of all parties concerned would be greatly promoted by a sale thereof, and more especially would his ward'be greatly benefited by such a sale; and influenced by that consideration he most heartily concurred, and still concurs, in the sale made by William Frazier for himself and on behalf of other parties in interest to Joseph Baxter on 6th February 1863 * * * ; that said sale was for a full and very adequate price, and highly advantageous, so far as his ward is concerned;” and asks that the court may confirm said sale.
A guardian ad litem was appointed for the infant, and he also files his concurrence. The infant (the appellant) being over the age of fourteen years, (then being seventeen years of age,) his answer is also filed, in which he says: “The sale made of the ‘Bath Alum’ Springs is highly advantageous to the parties interested therein, and especially to the respondent, and that the consideration agreed to be paid by said Joseph Baxter is fully adequate; that he is therefore willing that the sale should be confirmed; but being under the age of twenty-one years he submits his in- ’ terest to the protection of the court.”
The depositions of three highly respectable witnesses, who were well acquainted with the property and its then present condition, were taken and returned to the court. They all agree in four most material facts: 1st, that the property is of such a character that it could not be divided in kind; 2d, that it was rapidly depreciating and going to ruin; 3d, that the price offered by Baxter was a full and adequate price; and 4th, that it was to the manifest interest of all the parties that the sale made to Baxter for thirty *505 thousand dollars cash should be confirmed by the court.
On the 15th of May 1863, the cause coming on to be heard on the bill and answers, exhibits filed, and examination of witnesses, and the court being of opinion that the Bath Alum Springs property was altogether “incapable of division by metes and bounds, without great injury and sacrifice of the rights and interests of those entitled, that a sale for division is not only absolutely necessary, but that even if the subject were susceptible of division in kind, a sale of the subject would better promote the interests of the infant defendant, as well as the adults, than a specific allotment and division;” and being further of opinion that the sale to the defendant, Baxter, for thirty thousand dollars in Confederate 8 per cent. bonds is judicious, and for a full and adequate price,” the said sale to Baxter was ratified and confirmed by the cour,t.
After the close of the war, and after by its result Confederate bonds had become worthless, the infant defendant in the suit of Randolph & Frazier v. Porter &c., (James A. Brazier) having arrived at age filed his bill, in which he claimed the right to show cause against the decree in that suit above referred to, and impeached the decree upon various grounds. The cause came on to be heard upon the bill and answers and deposition of witnesses, and the Circuit court of Bath pronounced its decree, in which it was held that the case of Frazier & Randolph v. Stephen A. Porter et als., was a suit for partition under the one hundred and twenty-fourth chapter of the Code of Virginia (1860); that all the proceedings were regular; that it was satisfactorily proven by intelligent and disinterested witnesses, that the Bath Alum Springs *506 property was incapable of division in kind; that the-property was rapidly going to decay; that the interest of the plaintiff, then a minor, would be promoted by a saiej anq the price agreed to be paid by the defendant, Joseph Baxter, was fair and adequate, and no reason now appearing for impeaching the decree confirming-said sale rendered on the 15th day of May 1863,. either on the ground of fraud, Collusion or error, it is therefore adjudged, ordered and decreed that the plaintiff’s bill (original and amended) be dismissed.. It is from this decree that an appeal was allowed by this court.
The court is of opinion that there is no error in this: decree of the said Circuit court.
The proceedings in the suit of Frazier & Randolph v. Porter others, were all regular and in strict conformity with the provisions of the third section of chapter 124, Code 1860.
Under the pleadings and evidence in that cause, prepared and conducted with unusual care, conforming in every respect to all the provisions of the statute, the Circuit court of Bath had full and unquestioned authority to decree a sale of the subject. It had the-same authority to ratify and confirm a contract of sale which the adult parties had already entered into, upon condition of its subsequent ratification by the court.
The complaint of the appellant that the consideration was grossly inadequate because it was sold for Confederate money greatly depreciated, and the investment for him in Confederate bonds, and that he-has thereby lost his inheritance without his assent, is. one made in the light of subsequent events; and is not such cause shown against the decree as can now impeach or invalidate it. In Walker’s ex’or v. Page 21 Gratt. 636, this court held, that “the right of an *507 infant to show cause against a decree which affects his interests after he arrives at age must be limited to this extent, to show cause existing at the rendition of the decree, and not such as arose afterwards. The 7 question always must be, can any cause be shown why the decree at the time it was rendered was not a legal and binding decree?”
The argument now made, that the interests of the infant were not promoted, because the land was sold for a depreciated currency, and the investment made in Confederate bonds, which proved to be worthless, is, as was said in Walker’s ex’or v. Page, “ not based- upon the evidence before the court at the time the decree .was entered for a sale of the property, is not made in the light of the facts then existing and proved before the court, but upon facts existing subsequent to the decree, and in the light of events that happened after-wards. It is easy to show now, after the close of the war, after Confederate currency and Confederate securities have perished, that as subsequent events have transpired, the interest of the infant has not been promoted by a sale of his real estate. And if such considerations could govern the adjudications of this court, then every sale of real estate in which infants were interested, made under decrees of courts during the war, must be vacated and annulled. The conclusion this court announced, in the case above cited, after a most careful and deliberate consideration, was this: “If the court which pronounced the decree had jurisdiction of the subject and the parties; if the proceedings were regular and in accordance with the requirements of the law, and the decree is sustained and justified by the. evidence there introduced, the infant, upon arriving at age, will not be allowed, as against a bona fide purchaser, to go out of the record to *508 show that, upon facts and events arising subsequent to the rendition of the decree, his interests were not promoted by a sale of his real estate; especially when these subsequent events were the results of civil and political revolutions, over which the parties and the court of chancery had no control, and could not possibly foresee.” These principles, enunciated in the case of Walker’s ex’or v. Page, have been repeatedly recognized and reaffirmed by this court.
But the case before us, in many of its aspects, is a case still stronger for affirmance than Walker & Page. That was a case of the sale of infant’s land under a bill filed by the guardian. This is a case of partition, in which the adult parties were interested along with the infant, and their interests were the same as that of the infant. One of the plaintiffs, William Brazier, was a near relative of the infant, and had the same interest as the iufant. The co-defendants were the mother, the step-father and guardian of the infant. All the parties, both plaintiffs and defendants, united in asking for a sale, and all united in insisting that the property could not be conveniently divided in kind. The proceeding was, as it properly ought to have been, under the provisions of the 124th chapter, Code 1860, and not under chapter 128. It was a suit for partition, and not a suit for the sale of infant’s land by the guardian. Every requirement of the former statute was strictly complied with. It was conclusively shown both that partition of the entire subject could not be conveniently made, and that the interests of the parties entitled would be promoted by a sale. It is true that one of the parties entitled was an infant; but the third section of chapter 124 expressly provides, that such sale for partition may be made “ notwithstanding ■any of the parties entitled may be an infant.”
*509 The record shows that the suit of Frazier & Randolph v. Porter & wife &others, was conducted with unusual care, not only observing all of the requirements under chapter 124, (Code 1860,) but, as far as possible, those of chapter 128, making the guardian of the infant a party, with his sworn answer approving the sale, the infant himself a party, with his answer, (he being seventeen years of age,) approving the ^ale, and appointing a guardian ad litem for the infant. All these answers concurred in asking for a sale, and admitting that the land could not conveniently be divided in kind. The evidence of respectable witnesses all concur in stating that a division thereof could not be made, and that the interest of all parties would be promoted by a ratification of the sale to Baxter; which all concurred in opinion was a full and adequate price. All this concurred in by the experienced and able judge who entered the decree, made it a case in which this court is constrained to conclude cannot now be impeached or invalidated.
But it is insisted by the learned counsel for the appellants, that the parties in the suit of Frazier & Randolph v. Porter & wife et als. were also tenants in common, and joint owners in the “Bockbridge Alum Springs,” as well as in the “Bath Alum,” which last was the subject of the suit for partition, and that partition might have been made in kind if both of these tracts of land had been taken into account in the suit for partition. It is sufficient in answer to the objection, to note the fact, that these two properties are not only entirely separate,' lying more than twenty miles apart, but are situated in different counties, one being in the county of Bath, and one in the county of Bockbridge. The latter was valuable and remunerative as “spring’s property;” the other was never a successful enterprize; was occupied at the *510 time the decree of sale was entered, as a hospital, liable to be destroyed on that account by raiding parties of the Federal army, and rapidly falling into ruin and decay. Reasons which applied with full force to sell the one piece of property, had no application to the other. The parties in interest could not be compelled to sacrifice their interest in the “Rockbridge Alum” property lying in a different county and a different jurisdiction, in order to make a sale of the “Bath Alum” property, which, by common consent, it was necessary to sell for partition.
The only remaining objection to the decree of the Circuit court of Augusta, in the case of Frazier & Randolph v. Porter & wife is, that the contract of sale made by the adult parties to Baxter, which was confirmed by the court, included certain personal property, being the furniture left at the Bath Alum Springs, and that the testimony of the witnesses was confined to the value of the real estate.
To this complaint, it is sufficient to say that this objection was not made in the original bill impeaching the decree, and was not then thought of as a ground of invalidating that decree until after the suit had progressed to a final decree: then an amended bill was filed for the first time urging this point. But the evidence taken under the amended bill shows that this old furniture was only worth some $2,000 or $2,500 in Confederate money, and could not have been a material element to change the estimate of value of the real property by the witnesses, who all agreed that the purchase at thirty thousand dollars was a very high price for the property.
Upon the whole case, we are of opinion that there is no error in the decree of the Circuit court of Bath, and that the same be affirmed.
Decree affirmed.